## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

DETROIT RADIO, LLC, a wholly owned
subsidiary of CUMULUS MEDIA, INC.,

      Plaintiff,                    CASE NO. _____

v.                                  HON._____

KRISTINA WILLIAMSON and
WOODWARD SPORTS NETWORK, LLC,

      Defendants.

---

THOMAS R. PAXTON (P36214)
DANIEL G. COHEN (P41735)
Ogletree, Deakins, Nash,
Smoak & Stewart, PLLC
Attorneys for Plaintiff
34977 Woodward Avenue, Suite 300
Birmingham, MI  48009
(248) 593-6400
(248) 583-2925 (fax)
thomas.paxton@ogletree.com
daniel.cohen@ogletree.com

---

## PLAINTIFF'S VERIFIED COMPLAINT

NOW COMES Plaintiff, DETROIT RADIO, LLC, a wholly owned subsidiary of CUMULUS MEDIA, INC. ("Cumulus") by and through its attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, PLLC, and for its Verified Complaint against Defendants Kristina Williamson, and Woodward Sports Network, LLC

("WSN") states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Cumulus Media, Inc. is a Delaware Limited Liability Corporation with its principal place of business and Company headquarters in Atlanta, Georgia. Cumulus maintains a wholly owned subsidiary known as "Detroit Radio L.L.C." which is located in Detroit, Michigan.

2.      Kristina Williamson (hereinafter referred to as "Williamson") is a Michigan resident and former employee of Cumulus, who upon information and belief resides in the City of Clawson, County of Oakland, State of Michigan. Defendant Williamson has used and is believed to be currently exploiting a persona and trade stage name of "Krissy" and/or "Krissy T".

3.      WSN L.L.C. ("WSN") is a Michigan Limited Liability Corporation with its principal place of business in Birmingham, Michigan.

4.      WSN conducts business in the counties of southeastern Michigan.

5.      This Court has jurisdiction according to 28 U.S.C. §1331 because of the allegation of a federal question under 15 U.S.C. §§ 1051 *et seq*., as well as the diversity of the citizenship of the parties consistent with 29 U.S.C. § 1332. Further, Cumulus seeks injunctive relief.

## COMMON ALLEGATIONS

6.      Cumulus is a broadcasting company that owns and operates radio

2

stations throughout Metropolitan Detroit, including a station identified by call letters "WDRQ-FM/93.1".

7.      Cumulus and its various radio stations maintain various trademarks and servicemarks in logos and talent "persona" such as nicknames and images that they use to promote the station's brand, programs services and advertisers.

8.      WDRQ and its shows are very well known amongst consumers and its brand is distinctive and has attained secondary meaning with consumers.

**Williamson's Employment with Cumulus.**

9.      At all times relevant hereto, Williamson, using the stage name "Krissy" and/or "Krissy T" appeared as the co-host on a morning radio show known as "Broadway and Krissy in the Morning" (the "Show") on WDRQ.

10.     Williamson joined Cumulus on February 7, 2020 as an "On Air Personality" under the terms of an employment contract.  **(Ex. A.)**

11.     The employment contract specifically detailed Williamson's duties and responsibilities. They included: "performing on-air shifts on the Station, provide color commentating, and execute show content determined by morning show host and Program Director; preparing and delivering live and recorded commercials, liners, audio and video Endorsements, cooperating with Company to create podcasts of Employee's on-air shifts and/or to visually record or stream such air shifts for distribution, positively connecting and interacting with listeners, artists, and guests

via phones, social media, video, web, and on-site/in person.  (Ex. A ¶1.5.)

12.    That contract also contained restrictive covenants in which Williamson agreed she would not, directly or indirectly, engage in any activities the same or essentially the same as Employee's Job Duties for any Competing Business located or selling advertising within, or broadcasting to, the Business Area for six (6) months after the termination of her employment.  (Ex. A ¶ 7.)

13.    She also agreed to refrain from, directly or indirectly, for any Competing Business, solicit[ing], for the purpose of selling advertising time, any sponsor/ customer of the Company for twelve (12) months after the termination of her employment.  (Ex. A ¶ 8.)

14.    Williamson also granted Cumulus the right to use her name, voice, likeness and biographical material to promote Cumulus's business programs and service and the services and products of Cumulus' advertisers and customers.  (Ex. A ¶ 14.)

15.    Williamson specifically agreed she would not use or authorize the use of her professional name, nickname, performances, portrait, picture or likeness to advertise, promote, distribute, or publicize in any manner, any institution, product, or service for any person or entity, including on Employee's own behalf, other than the Company or its affiliated entities without obtaining the prior express written consent of the Company.  (Ex. A ¶14.)

16.    As an essential premise to the Agreement, Williamson acknowledged and agreed "that the approval, acceptance, and goodwill developed by [her] with [Cumulus's] listening audience and customers/sponsors is a valuable asset of [Cumulus]'s business, and is essential to [its] success in a highly competitive market."  (Ex. A.)

17.    Williamson acknowledged and agreed "that [Cumulus's] confidential business information is also a valuable asset of [its] business, and essential to [Cumulus's] competitive success."  (Ex. A.)

18.    By executing the employment contract, Williamson acknowledged "that [Cumulus] would suffer irreparable harm if [she] were to misuse the approval, acceptance, and goodwill that [she] develops on [Cumulus's] behalf, or the confidential information that [she] obtains while in [Cumulus's] employ, to compete unfairly against [Cumulus]."  (Ex. A.)

19.    Williamson agreed that any litigation to enforce the clauses set forth above would toll the identified time periods until fully resolved.

20.    Williamson acknowledged that the above clauses are "necessary to protect [Cumulus's] property and business, and that [her] breach of any of [the above clauses] may cause [Cumulus] to suffer irreparable loss and damage."  Accordingly, Williamson agreed that if breaches or threatens to breach any of the above clauses, Cumulus "shall be entitled to immediate injunctive relief to enforce [the] Agreement,

money damages for whatever harm such breach causes [Cumulus], and whatever other remedies are available." (Ex. A.)

21.     Williamson acknowledged that 5% of her salary was provided in consideration for her assuming the above obligations and that such percentage was valuable and sufficient consideration.

22.     Williamson agreed "to pay all costs, expenses and/or charges, including reasonable attorneys' fees, incurred by [Cumulus] in enforcing any of the provisions [of the employment contract]". (Ex. A.)

**Cumulus Develops And Promotes The "Krissy" and/or "Krissy T." Persona**

23.     Cumulus developed the Show and continuously refined the Show and promoted the Show by great effort and expense specifically incorporating the "Krissy" and/or "Krissy T." persona.

24.     Cumulus promoted Williamson's distinctive persona and look on social media, video commercials and pictures. The cost of the promotional campaign was approximately $10,000.

25.     In the time that Williamson was co-hosting "Broadway and Krissy in the Morning," WDRQ's morning show ratings in the 25-54 year old category went from 18th to 5th.

26.     During the time Williamson was employed by Cumulus, WDRQ gained the second highest rating among the male audience in the Detroit market.

27.     Cumulus gained a substantial sponsor when Moran Automotive entered into an exclusive endorsement partnership with Cumulus's "New Morning Show Co-Host Krissy".   This endorsement was worth $60,000.   Moran cancelled the contract when Williamson terminated her employment.

28.     By her employment, Williamson was aware of the efforts and expense Cumulus expended in developing the Show and promoting her.

## Williamson's Post-Employment Conduct

29.     On or about October 16, 2020, Williamson asked Lance Tidwell ("Tidwell"), Program Director at Cumulus for permission to work for a competitor.

30.     Neither Tidwell nor any other authorized representative of Cumulus permitted Williamson to appear on air or compete contrary to her contractual obligations.

31.     On or about November 5, 2020, Williamson claimed that she intended to resign from Cumulus to take a position with WSN.

32.     Williamson advised Cumulus that she planned to accept a job with WSN as a "brand influencer" assisting WSN with its social media platforms.  (**Ex. B.**)

33.     Steve Finateri ("Finateri"), Cumulus' Vice President/Market Manager, informed Williamson that she could not unilaterally decide not to abide by the terms of the continuing restrictive obligations under the employment contract unless

Cumulus specifically release her from those obligations.

34. Williamson represented to Finateri that her employment with WSN would be an off-air position and that she would not be violating her contractual restrictions by broadcasting, podcasting or otherwise.

35. Finateri indicated to Williamson that any release would be limited and allow her to only work off-air and not compete using the "Krissy" and/or "Krissy T" persona.

36. On November 7, 2020, Cumulus and Williamson entered into a "Confidential and Partial Release from Employment Agreement and General Release." **(Ex. C.)**

37. By executing the "Confidential and Partial Release from Employment Agreement and General Release," Williamson acknowledged and agreed "that she is voluntarily leaving [Cumulus's] employment solely for the purpose of taking a Brand Influencer position with [WSN] to provide services solely in and with respect to the Detroit, Michigan market." (Ex. C.)

38. By executing the "Confidential and Partial Release from Employment Agreement and General Release," Williamson specifically agreed that the non-compete and non-solicitation provisions of the employment contract would remain in full force and effect through August 6, 2022 and February 6, 2023, respectfully. (Ex. C.)

39.     By executing the "Confidential and Partial Release from Employment Agreement and General Release," Williamson also agreed that she would comply with the confidentiality provision contained in Paragraph 6 of the employment contract, the property rights provision contained in Paragraph 15 of the Employment Agreement and the attorneys' fees provision contained in Paragraph 21 of the Employment Agreement.  (Ex. C.)

40.     Williamson acknowledged that the above clauses set forth in Paragraphs 37 and 38 above are "necessary to protect [Cumulus's] property and business, and that [her] breach of any of [the above clauses] may cause [Cumulus] to suffer irreparable loss and damage."  Accordingly, Williamson agreed that if she breaches or threatens to breach any of the above clauses, Cumulus "shall be entitled to immediate injunctive relief to enforce [the] Agreement, money damages for whatever harm such breach causes [Cumulus], and whatever other remedies are available."  (Ex. C.)

41.     Williamson agreed that any litigation to enforce the clauses set forth above would toll the identified time periods until fully resolved.  (Ex. C.)

42.     Williamson also agreed "to pay for any legal fees or costs incurred by Cumulus as a result of [her] breach of any promise in [the] Agreement.  (Ex. C.)

43.     Upon information and belief, Williamson provided a copy of the "Confidential and Partial Release from Employment Agreement and General

Release" to WSN for its review.  (**Ex. D.**)

44.     Shortly after signing the "Confidential and Partial Release from Employment Agreement and General Release," Williamson began on-air broadcasting, streaming and podcasting as the co-host of the "Waking Up With Morning Wood with Joey, Stick and Krissy" show broadcasting live out of WSN's Birmingham, Michigan studio for and on behalf of WSN.

45.     The "Morning Wood" Show is a direct competitor to Cumulus's morning show on WDRQ -FM/93.1 for both listeners and sponsors/customers in much of the same broadcast time slot.

46.     The WSN "Morning Wood" Show is directed at the same listener demographic as Cumulus's morning show that Williamson had appeared on.

47.     As of the filing date, Williamson broadcasts the Competing Show every weekday morning at a similar time that she had as co-host of Cumulus morning show.

48.     The most recent Nielson PPM ratings of the Cumulus morning show dropped precipitously immediately after Williamson began appearing on the competing WSN morning show.

49.     Upon information and belief, Williamson and WSN conspired to launch the Competing Show and continue morning broadcasting prior to the termination of her employment.

50.    Upon information and belief, Williamson and WSN conspired to unfairly compete against Cumulus by effectively continuing Williamson's name and on-air persona, and soliciting the same advertisers and listenership.

51.    The allegations regarding conspiracy are substantiated by the short time period between the resignation of Williamson's employment and the launch of the technologically sophisticated Competing Show via multiple internet outlets. Further, the Competing Show appears to take place in a dedicated broadcast studio, staffed by a production crew.

52.    By her wrongful actions Williamson and WSN have misappropriated, and continues to misappropriate, a significant and growing block of Cumulus's audience.

53.    These actions have the effect of confusing the identity of Cumulus station and WSN and its competing shows and luring Cumulus's corporate sponsors away from Cumulus, thereby damaging its well-earned good will, reputation and business.

54.    In fact, Cumulus has lost at least one advertiser and it is expected that Cumulus will realize additional losses in the future, as events once held for its advertisers do not occur.

55.    By committing the post-employment acts described herein, Williamson is in clear and direct violation of her employment contract and "Confidential and

Partial Release from Employment Agreement and General Release" and has also committed violations of federal law; Michigan statutory and common law, as set forth below.

56.     In correspondence dated November 17, 2020, Cumulus notified Williamson of her violations of her employment contract and "Confidential and Partial Release from Employment Agreement and General Release" and requested that Williamson cease and desist her specifically prohibited unfair competitive conduct. **(Ex. E.)**

57.     In correspondence also dated November 17, 2020, Cumulus notified Chad Johnson of WSN, placing WSN on notice of Williamson's continuing obligations under her employment contract and "Confidential and Partial Release from Employment Agreement and General Release," and informing WSN that continuing to engage her to perform activities that are the same or essentially the same as her activities for Cumulus constitute tortious interference. **(Ex. F.)**

58.     Despite Cumulus's reminder to Williamson of her continuing obligations under her employment contract and "Confidential and Partial Release from Employment Agreement and General Release", Williamson continues to operate the Competing Show in dereliction of the agreed-upon terms of those Agreements and in violation of Michigan statutory and common law.

59.     Despite Cumulus's reminder to WSN of her continuing obligations under her employment contract and "Confidential and Partial Release from Employment Agreement and General Release", WSN continues to engage Williamson in activities that are the same or essentially the same as her activities for Cumulus.

## COUNT I – BREACH OF CONTRACT

60.     Cumulus incorporates by reference paragraphs 1 through 59, as though fully set forth herein.

61.     Williamson executed an employment contract with Cumulus in early 2020 and a "Confidential and Partial Release from Employment Agreement and General Release" that included provisions limiting her post-employment conduct. (Exs. A and C.)

62.     By the conduct described herein, Williamson has materially breached her employment contract and the "Confidential and Partial Release from Employment Agreement and General Release" particularly her covenant to maintain confidentiality, not solicit sponsors/customers and not compete.

63.     Williamson's conduct in violation of her employment contract and "Confidential and Partial Release from Employment Agreement and General Release" described herein has caused Cumulus thousands of dollars in actual damages and will continue to cause Cumulus actual damages.

64.    Williamson's conduct also undermines and impairs Cumulus's good will, for which money damages are inadequate.

65.    Cumulus will suffer irreparable harm if Williamson's improper and unlawful conduct in violation of her employment contract and "Confidential and Partial Release from Employment Agreement and General Release" is not enjoined.

## COUNT II – UNFAIR COMPETITION

66.    Cumulus incorporates by reference its allegations in paragraphs 1 through 65, as though set forth fully herein.

67.    Cumulus has retained ownership of Willamson's nicknames and characters which constitute protected "service marks".

68.    Williamson's use of the service  mark "Krissy" and/or "Krissy T", and others in association with services and goods in direct competition with Cumulus and has or is very likely to create confusion concerning the origin of the services and goods, in violation of the Lanham Act being 15 U.S.C. §1125(a).

69.    Cumulus is entitled to monetary damages for Williamson's improper, use of Cumulus' distinctive marks in contravention of her specific agreement not to do so.

70.    Notwithstanding the above relief, Cumulus will continue to suffer irreparable harm until Williamson's improper, malicious, and tortious conduct is enjoined.

## COUNT III – TORTIOUS INTERFERENCE
## WITH CONTRACT AS TO WILLIAMSON

71.     Cumulus incorporates by reference paragraphs 1 through 70, as though fully set forth herein.

72.     Williamson, by the above-described actions, has intentionally and improperly interfered, and continues to intentionally and improperly interfere, with Cumulus's sponsors, causing at least one sponsor to discontinue its advertising with Cumulus.

73.     Williamson has intentionally interfered, and continues to intentionally interfere with Cumulus's contracts with sponsors and advertisers, reducing or eliminating the revenue derived therefrom and the expectation and continued business relationship with those sponsors and advertisers.

74.     Williamson's conduct lacked any justification whatsoever, especially in light of the terms and duties of her employment contract and "Confidential and Partial Release from Employment Agreement and General Release".

75.     Cumulus is entitled to monetary damages resulting from Williamson's improper and tortious conduct.

76.     Notwithstanding Cumulus's entitlement to monetary damages, Cumulus will continue to suffer irreparable harm until Williamson's improper, malicious, and tortious conduct ceases.

## COUNT IV – TORTIOUS INTERFERENCE WITH
## BUSINESS RELATIONSHIP/EXPECTANCY AS TO WSN

77.     Cumulus incorporates by reference paragraphs 1 through 76, as though fully set forth herein.

78.     WSN, by the above-described actions, has intentionally and improperly interfered, and continues to intentionally and improperly interfere, with Cumulus's listener base, customers, sponsors, and potential sponsors.

79.     WSN's conduct including continuing to allow and promote Williamsons violation of her contractual obligations not to unfairly compete lacked any justification whatsoever, especially in light of the terms and duties of her employment contract and "Confidential and Partial Release from Employment Agreement and General Release".

80.     Williamson's malicious and improper conduct has and continues to directly and proximately cause Cumulus's damage.

81.     Notwithstanding Cumulus's entitlement to monetary damages, Cumulus will continue to suffer irreparable harm until Williamson's improper, malicious, and tortious conduct ceases.

## COUNT V – UNJUST ENRICHMENT

82.     Cumulus incorporates by reference paragraphs 1 through 81, as though fully set forth herein.

16

83.     As set forth herein, Williamson has benefited from her feigned association with Cumulus and her appropriation and use of Cumulus's confidential information, including trade secrets, and property.

84.   Permitting Williamson to benefit and continue to use and benefit from her tortious and improper conduct, including appropriation of Cumulus's trade secrets, would be inequitable and result in Williamson's unjust enrichment and irreparable harm to Cumulus.

85.   Notwithstanding Cumulus's entitlement to monetary damages, Cumulus will continue to suffer irreparable harm until Williamson's improper, malicious, and tortious conduct is enjoined.

## COUNT VI – STATUTORY CONVERSION

86.   Cumulus incorporates by reference its allegations in paragraphs 1 through 85, as though set forth fully herein.

87.   As set forth above, Williamson knowingly obtained Cumulus's confidential information, including trade secrets, and has converted such to her own personal use and for her own personal profit.

88.   Williamson's actions constitute conversion under M.C.L.A. 600.2919(a).

89.   Cumulus is entitled to three times the amount of actual damages it has sustained due to Williamson's conversion of its property, plus costs and reasonable

attorney fees.

90.    Notwithstanding Cumulus's entitlement to monetary damages, Cumulus will continue to suffer irreparable harm until Williamson's improper, malicious, and tortious conduct is enjoined.

## COUNT VII – COMMON LAW CONVERSION

91.    Cumulus incorporates by reference its allegations in paragraphs 1 through 90, as though set forth fully herein.

92.    Williamson has wrongfully converted Cumulus's proprietary, confidential information, including trade secrets to her own personal use and for her own personal profit.

93.    Notwithstanding Cumulus's entitlement to monetary damages, Cumulus will continue to suffer irreparable harm until Williamson's improper, malicious, and tortious conduct is enjoined.

## COUNT VIII – CONSPIRACY

94.    Cumulus incorporates by reference paragraphs 1 through 93, as though fully set forth herein.

95.    WSN knew or should have known that Williamson was a party to an employment contract and "Confidential and Partial Release from Employment Agreement and General Release" that prevented her from using or disclosing

Cumulus's confidential, proprietary information and trade secrets, soliciting Cumulus's sponsors/customers and engaging is competitive on-air activities

96.    Despite this actual or constructive knowledge, WSN offered to engage Williamson and actually engaged her in competitive on-air activities in violation of her employment contract and "Confidential and Partial Release from Employment Agreement and General Release."

97.    WSN and Williamson acted in concert to plan and carry out the unlawful and wrongful acts, separate, independent torts, set forth herein for the purpose of operating a directly competing business venture.

98.    The concerted actions of WSN and Williamson constitute a civil conspiracy that will continue to harm Cumulus until enjoined.

## COUNT IX – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP/EXPECTANCY AS TO WILLIAMSON

99.    Cumulus incorporates by reference paragraphs 1 through 98, as though fully set forth herein.

100.   WSN, by the above-described actions, has intentionally and improperly interfered, and continues to intentionally and improperly interfere, with Cumulus's business and employment relationship with Williamson.

101.   WSN's conduct lacked any justification whatsoever, especially in light of the terms and duties of her employment contract and "Confidential and Partial Release from Employment Agreement and General Release" known to WSN.

102.   WSN's malicious and improper conduct has and continues to directly and proximately cause Cumulus's damage.

103.   Notwithstanding   Cumulus's   entitlement   to   monetary   damages, Cumulus will continue to suffer irreparable harm until WSN's improper, malicious, and tortious conduct ceases.

## COUNT X – INJUNCTIVE RELIEF

104.   Cumulus incorporates by reference paragraphs 1 through 103, as though fully set forth herein.

105.   The wrongful conduct of Williamson, as described herein has caused, and will continue to cause, irreparable injury to Cumulus, its business reputation, and goodwill.

106.   Williamson has agreed that the breach of her employment contract and "Confidential   and   Partial   Release   from   Employment   Agreement   and   General Release" would   cause   Cumulus   irreparable   harm   and   would   be   the   basis   for injunctive relief by this Court.  (Exs. A and C.)

107.   Aside from the provisions of Williamson's employment contract and "Confidential   and   Partial   Release   from   Employment   Agreement   and   General Release", Cumulus has no adequate remedy at law because monetary damages will not completely compensate Cumulus where its listener base and reputation are being permanently undermined due to Williamson's unlawful competition and tortious

interference.

108.    If a preliminary and permanent injunction is not entered, Cumulus will suffer an unfair, permanent commercial disadvantage in that its own confidential, proprietary information and trade secrets are being used against it unfairly and in contravention of Williamson's employment contract, her "Confidential and Partial Release from Employment Agreement and General Release" and Michigan statutory and common law.

109.    Further, if an injunctive order compelling affirmative acts of Williamson including restricting Williamson's contact with Cumulus sponsors/ customers, Cumulus will suffer permanent, irreparable harm.

110.    This Court is authorized to continue any injunction for actual threat for breach of the terms of his employment contract and "Confidential and Partial Release from Employment Agreement and General Release" for an additional reasonable period of time in order to eliminate the commercial advantage that otherwise would be deprived Cumulus due to Williamson's breach of the Agreements and improper, tortious conduct.

111.    The harm to Cumulus by not issuing injunctive relief will substantially outweigh any harm to Williamson if injunctive relief is issued.

112.    Further, the public interest will be served by enjoining and restraining Williamson's unlawful and improper conduct.

113.    Cumulus will continue to be irreparably harmed unless and until Williamson is preliminarily and permanently enjoined from the unlawful, malicious, and improper actions described herein.

WHEREFORE, Plaintiff, Detroit Radio, LLC, a wholly owned subsidiary of Cumulus Media, Inc., respectfully requests that this Honorable Court enter orders and judgments granting the following relief:

A.    A preliminary injunction, and after a final hearing, a permanent injunction, enjoining Williamson from:

1.    Continuing to engage in competitive activities, including but not limited to, on-air broadcasting, streaming, and podcasting in contradiction of the terms of her employment contract and "Confidential and Partial Release from Employment Agreement and General Release";

2.    Continuing to use Cumulus's confidential information, including but not limited to, its business plans, marketing plans, special pricing or rate arrangements, programming strategies, studies, surveys, proprietary research, customer or advertising lists, and programming or promotional plans;

3.    Continuing to solicit, or attempt to solicit, sponsors/customers that had contact with Cumulus during the last 12 months Williamson

was an employee.

B.     A preliminary injunction, and after a final hearing, a permanent injunction, requiring Williamson to do the following within 30 days:

1.     Make a detailed accounting of income generated from her competing activities and produce to Cumulus so that Cumulus can determine the full extent of the damages caused by Williamson's conduct;

2.     Return to Cumulus all copies of Cumulus's proprietary, confidential documentation and any record of trade secrets.

C.     An order granting the parties leave to commence discovery immediately, including taking the depositions of Williamson and Chad Johnson, and performing computer forensic analyses on any computer or electronic devices that either utilized to retain or store Cumulus's' confidential or proprietary information and and/or trade secrets.

D.     An Order awarding Cumulus actual, exemplary, and compensatory damages for such actual losses and any benefit derived by Williamson as reasonably ascertainable and determined to have been suffered by Cumulus from the aforesaid wrongful actions.

E.     An Order awarding Cumulus three times the amount of damages sustained as a consequence of the unlawful conversion of Cumulus's

property by Williamson.

F.     An Order awarding Cumulus punitive damages in light of Williamson's

intentional and willful misconduct in taking the actions referenced

herein.

G.     An Order awarding Cumulus' attorneys' fees, costs, and interest.

H.     An Order granting Cumulus such other relief as the Court may deem

just and proper.

Respectfully submitted,

OGLETREE, DEAKIN NASH
SMOAK & STEWART, PLLC
s/ Thomas R. Paxton
THOMAS R. PAXTON (P36214)
DANIEL G. COHEN (P41745)
Attorneys for Plaintiff
34977 Woodward Avenue, Suite 300
Birmingham, MI  48009
(248) 593-6400
thomas.paxton@ogletree.com
daniel.cohen@ogletree.com

Dated:  December 23, 2020

## VERIFICATION

I, Steve Finateri, being duly sworn, states as follows:

That I am the Vice President/Market Manager of Cumulus, LLC in the above action and I have read the foregoing Plaintiff's Verified Complaint and Exhibits A through F attached thereto and know the contents thereof; that the same is true of my own personal knowledge except as to those statements made upon information and belief and as to those, I believe them to be true.

_____
Steve Finateri

Subscribed and sworn to before
me this _23rd_ day of December, 2020

_____
Notary Public in the State of Michigan
County of _____
Acting in the County of _____
My commission expires _____

MARY E. TORTOMOSE
NOTARY PUBLIC, STATE OF MI
COUNTY OF MACOMB
MY COMMISSION EXPIRES Nov 6, 2025
ACTING IN COUNTY OF OAKLAND

45408283.1